## Upper Darby Township's Petition

*Robert W. Beatty*, for petitioner.

MACDADE, P. J., August 18, 1943.—The Township of Upper Darby, a municipality and township of the first class, presented a petition to this court for leave to pay the claim of the White Motor Truck Company in the sum of $889.05. The petition recited that, on or

about August 10, 1942, a certain White motor truck of the township, which was necessary to be used in the collection of ashes and rubbish, was in urgent need of repair. The petition further recited that the immediate repairs considered necessary to be made were of a value less than $500, but, in the course of repairing the truck, it became apparent that additional repairs and parts were necessary, which resulted in the total cost of $889.05. By reason of the fact that the extensive nature of the repairs was not originally known to the township, the advertisement for bids was not made.

Upon presentation of the petition, March 3, 1943, was fixed as the date for a hearing and notice thereof was directed to be given by advertisement in newspapers of general circulation in the township. The hearing was held on the day fixed before the writer as president judge of the court. Proof of publication of the notice of the hearing was submitted. No one appeared in opposition to the payment of the claim.

James E. Malone, secretary of the township, testified that, at a meeting of the commissioners on July 14, 1942, the health committee was authorized to have ash truck no. 7 repaired as quickly as possible.

James F. Connor, a commissioner of the township and chairman of the health committee of which the ash and rubbish department is part, testified that all the trucks operated in the department come under his supervision, and that, prior to the resolution authorizing the repair of ash truck no. 7, it was called to his attention that the truck had trouble with its engine. After the resolution was adopted, the truck was taken to the White Motor Truck Company for reconditioning. Mr. Connor testified that, after the bill was received from the White Company, he asked that it be checked and the bill was divided into different parts. He stated that, to the best of his knowledge, the work was done satisfactorily. The bill for repairs to the engine was $486.06, which included labor and materials.

Solomon Beese, an employe of the township, testified that he delivered the truck to the White Motor Truck Company.

William E. Reinhardt, chief mechanic of the township, testified that the bill for $486.06 represented the payment for the repairs to the engine, and that in his opinion these repairs were necessary and the cost was fair and reasonable. Mr. Reinhardt testified that the bill for $402.99 covered the work done to the frame, wheels and brakes and some electrical work, also installing glass in the cab and various repairs to the body of the truck. Evidently the commissioners directed the engine of the truck be sent to the White Motor Truck Company for repair, but the entire truck was taken to the company and the company made what repairs were considered necessary, which included repairs beyond repairs to the engine. Mr. Reinhardt testified that the bill for the additional work in the sum of $402.99 was fair and reasonable.

Edward L. Barnes, service superintendent of the White Motor Truck Company, testified that the truck had a present value of about $3,000, and stated he understood the additional work had been authorized, so the necessary work to the body and chassis was done.

George C. McCommons testified that he was in the credit and accounting department of the White Motor Truck Company. He also testified that on the bill in the sum of $402.99 there should be a credit of $36.37, which would reduce it to $366.62.

James E. Malone, secretary to the township, was recalled and testified that the commissioners authorized the proper officers of the township to petition the court to secure authority to pay the respective bills.

### Discussion

It seems evident that the repairs to truck no. 7 of the township should properly be divided into two parts:

the first part consists of repairs to the engine, which were the subject of the resolution by the commissioners and for which the cost was $486.06. As to this bill, there would seem to be no question but that it should be paid. It appears that the repairs to the engine were of an urgent nature and the sum was under $500, and was expressly authorized by resolution. Since the amount of the work was less than $500, the statute does not require that the contract be awarded upon advertisement for bids.

The second part of the repairs to the truck consists of repairs to the body and chassis of the truck which, while not expressly authorized by the board of commissioners, nevertheless were apparently necessary and advisable. It appears that the cost of these repairs was fair and reasonable and that no work was done beyond what was necessary to put the truck in good condition.

The witnesses for the township were commendably frank and it is apparent that work was done which, while not expressly authorized, was understood by the White Motor Company to have been ordered and as a matter of fact was found to be necessary to put the truck in proper condition. The current market value of the truck greatly exceeded the cost of these repairs.

If the repairs to this truck were properly divided into two parts, the result is that each part would be less than $500. It is believed, however, that to avoid any suggestion that there was an artificial division of the work on the truck into two parts the proper ground on which the payment of this bill should be founded is the principle that, when a municipality has received and appropriated the benefits of work, an implied obligation to make compensatory payment arises. In the present case, the benefits to the truck seem to be clearly established and the cost of the work fair and reasonable. The fact that the work was done by an agent of the manufacturer of the truck would indicate that

there was no attempt to avoid the provisions of the code.

In Luzerne Township v. Fayette County, 330 Pa. 247, the court said (p. 252):

"It is true that, in order to avoid results involving obvious injustice, the courts of some jurisdictions, including our own, have held that where a municipality or other local agency of government has voluntarily accepted and retained the benefits of a contract which it had the power to make but which was defective in the method of its execution and consequently invalid, the party who, by furnishing labor or material, has conferred such benefits may recover compensation therefor in a suit, not on the invalid contract itself, but upon a quantum valebat, quantum meruit, or for money had and received; see article on 'Quasi-Contractual Liability of Municipal Corporations' by Professor Tooke, 47 Harvard Law Review 1143. Common honesty requires that a municipality or other governmental agency should not be allowed, any more than a private individual, wholly to repudiate an obligation of which it has deliberately appropriated the benefits, and, in such cases, if the municipality does not restore the property which it has received, an implied obligation to make compensatory payment for it arises."

The court pointed out that the doctrine did not apply to benefits which could not be surrendered, such as paved highways or improvements upon buildings. It is believed, however, that the material furnished to and the repairs made on the body of a truck, benefits of which have been retained by the township, fall within the spirit of the principle that the municipality has received the benefit and is, therefore, under an implied obligation to make payment for its fair value. For this reason, the bill for the repairs to the body of the truck in the sum of $366.62, being the original bill of $402.99, less a credit of $36.37, should be paid.